## KOKOMO BRASS WORKS v. DORAN.

[No. 8,366. Filed May 14, 1914. Rehearing denied March 2, 1915. Transfer denied October 13, 1915.]

1. MASTER AND SERVANT.— *Injuries to Servant.— Common-Law Action.—Complaint.*—A complaint in a servant's action against the master for personal injuries is not good as the statement of a common-law action if it fails to allege that plaintiff did not at and prior to the accident have full knowledge of the conditions complained of, and full appreciation of any danger there might be in working at the place where he sustained the injury complained of. p. 588.

2. MASTER AND SERVANT.— *Injuries to Servant.— Statutes.— Complaint.—Sufficiency.*—The Employer's Liability Act of 1911 (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), must be strictly construed, and a complaint drawn under its provisions, to be sufficient, must affirmatively show facts within its provisions. p. 589.

3. MASTER AND SERVANT.—*Injuries to Servant.—Action Under Statute.—Complaint.—Sufficiency.*—The complaint in an employe's action for injuries from falling, alleging facts to show that defendant was a corporation engaged in business in this State, employing more than fifty persons, that plaintiff's injury was sustained while in the employ of defendant, and that the injury was due to the carelessness, negligence, fault or omission of duty of defendant, was properly construed as drawn within the provisions of the Employer's Liability Act of 1911 (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), and was therefore sufficient without negativing assumption of the risk. p. 589.

4. MASTER AND SERVANT.—*Injuries to Servant.—Action Under Statute.—Complaint.—Requisites.—Judicial Notice.*—It is not requisite to the sufficiency of a complaint drawn under the Employer's Liability Act that specific reference be made to the act itself by title and page, but it is sufficient if the allegations bring it within the terms of the act, since the court takes judicial cognizance of the statutes of the State. p. 590.

5. MASTER AND SERVANT.—*Injuries to Servant.—Action Under Statute.—Complaint.—Impairment of Contract.*—A complaint for injuries to a servant drawn under the Employer's Liability Act of 1911 (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), is not insufficient on the ground that, the relation of master and servant having arisen *ex contractu* prior to the passage of the act, to impose liability on defendant thereunder would be to impair the obligations of a contract, since the right to bring an action in the future in case of a possible tort is no part of the contract of

employment and is subject to legislative change at any time. p. 590.

6. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Sufficiency.*—A complaint in a servant's action for personal injuries alleging generally that the injury was due to the fault, negligence and carelessness of the master, is not insufficient as showing that the injury was the result of mere accident, in the absence of specific allegations to overcome the general averment of the master's negligence. p. 591.

7. MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.*—Where the complaint for personal injuries to a servant by reason of his foot slipping into an aperture near where he was standing while in the discharge of a certain duty, alleged that "as a direct and proximate result of his foot so entering into said aperture, and the negligence of the defendant in so leaving the same open, plaintiff lost his balance and fell with great force upon said iron grating upon his side and shoulder", etc., answers by the jury to interrogatories finding that plaintiff's injury was caused by falling and that the fall was caused by the plaintiff's foot slipping, but with no reference to the aperture, are in irreconcilable conflict with a general verdict for plaintiff, since reference to such aperture can not be supplied by reference or intendment, nor can it be said to be supplied by the general verdict. (*King v. Inland Steel Co.* [1912], 177 Ind. 201; *Evansville Hoop, etc., Co. v. Bailey* [1909], 43 Ind. App. 153; *Bessler v. Laughlin* [1907], 168 Ind. 38; *Davis v. Mercer Lumber Co.* [1905], 164 Ind. 413; and *Cook v. Ormsby* [1910], 45 Ind. App. 352, distinguished.) p. 592.

8. APPEAL.—*Review.—Instructions.*—An instruction in a servant's action for personal injuries advising the jury that in determining the question of defendant's negligence it could consider certain things "and all other facts and circumstances which you may determine as bearing upon such question", was too broad as not confining the jury to the facts directly pertaining to that question, and its giving was error in view of the many facts introduced that were not proper to be considered on the question of defendant's negligence. p. 595.

9. APPEAL.—*Review.—Harmless Error.—Refusal of Instructions.*—The refusal of an instruction correctly stating that the jury must take the law as given it by the court, and not from the argument of counsel, was not harmful error, where the court gave an instruction covering the point involved, though not in so comprehensive a manner as in the instruction requested. p. 596.

10. MASTER AND SERVANT.—*Injuries to Servant.—Accidental Injury.—Instructions.*—Where the defense in a servant's action for personal injuries was that of purely accidental injury, it was

error for the court to refuse an instruction stating that before plaintiff could recover he must show that his injuries were traceable directly and proximately to the negligence of the defendant, and that if plaintiff purposely or carelessly did any act which caused him to fall, or that he accidentally lost his balance and fell, and if the falling was not produced by the existence of the alleged defect, then such defect was not the proximate cause of plaintiff's injury and he could not recover. p. 597.

From Howard Circuit Court; *William C. Purdum*, Judge.

Action by John Doran against the Kokomo Brass Works. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*William A. Ketcham, Howe Stone Landers* and *Ralph M. Ketcham*, for appellant.

*Wilson & Quinn* and *Blacklidge, Wolf & Barnes*, for appellee.

SHEA, P. J.—Appellee brought this action to recover damages for personal injuries received by him while in appellant's employ, by reason of its alleged negligence. Appellant's demurrer to the amended complaint in one paragraph was overruled. The jury returned a general verdict in favor of appellee, also answers to ten interrogatories. Over appellant's motion for judgment in its favor on the answers to the interrogatories notwithstanding the general verdict, and its motion for a new trial, the court rendered judgment in favor of appellee for $4,000.

The errors assigned are the rulings of the court below on appellant's demurrer to the amended complaint, and on the motions for judgment on the answers to interrogatories notwithstanding the general verdict, and for a new trial.

The complaint is long, and we set out only the facts necessary to an understanding of the questions involved. It is alleged, among other things, in substance, that appellant is a corporation engaged in the manufacture and casting of various articles out of brass and aluminum, operating

in the city of Kokomo, Indiana, where it employs a large number of workmen, to wit, more than fifty. Appellee was in appellant's employ as a molder of aluminum, and in the course of his employment it was his duty to fill molds placed in position on the floor of appellant's molding room with aluminum which had theretofore been melted in ovens situated in said room, and to obey the commands and orders of appellant's employe in charge of the ovens in taking the molten metal out of same. There were eight ovens in a row, so constructed that the top was nearly level with the floor of the molding room, the bottom extending downward in a place excavated beneath the floor. The aluminum was melted in round pots placed in the center of the ovens, around which coke was placed and fired up. Near the bottom of each oven was an aperture for removing the ashes which accumulated. In order that the ashes could be readily removed, appellant constructed an excavation which extended several feet away from the ovens to the side thereof. This excavation or hole was covered with iron grates, which, when properly constructed, would fit around the ovens and prevent any opening between said grates and the side of the oven adjacent thereto. The opening in the floor' of the foundry room was four or five feet wide, six or seven feet deep, and about twenty feet long, and covered with iron gratings so placed that it was necessary for appellee in the performance of his duties as molder to cross them in order to get the metal from the said ovens, the grating being level with the floor and top of the ovens. It is charged that on May 18, 1911, and for more than thirty days prior thereto appellant had "carelessly and negligently maintained the grating covering that part of the opening in the floor of the molding room hereinabove described, at and near the last oven and the farthest distant from the place where the molds were placed * * * so that the said grating was not close up or flush with said oven, but said grating extended to within two and one-half or three inches

of said oven''; that said defect in the condition of the
grating and oven was well known to appellant and its offi-
cers and agents, or by the use of reasonable care might
easily have been known by them. The pots of melted
aluminum were heavy and brittle and easily broken, and
if broken while being removed or lifted out of the ovens,
the metal would run down into the furnaces; that by reason
of the coke being closely packed around the pots great
care was at all times necessary in removing them, and the
oven and pots of melted aluminum were extremely hot;
that the rim or edge of the ovens around which appellee
was required to stand in the performance of his duties in
removing said pots was about six inches wide and con-
structed of iron. In removing the pots of metal from the
ovens, it was necessary for appellee, and it was his duty,
to stand over the top of the oven, astride an iron bar with
a hook attached to the center thereof, and after the covering
of the oven had been removed, use a pair of tongs provided
by appellant for that purpose, to place the handle of the
pot of melted metal within the hook attached to the iron
bar, and with the assistance of two other employes furnished
by appellant to raise the pot in an exactly vertical direction
until it should clear the furnace; then step over said bar
so that same could be transported from the furnace to the
place where the metal was to be used; that in stepping
over the bar it was necessary for appellee to move one of
his feet a few inches to the right in order that he might
have a proper balance; that on May 18, 1911, appellee was
specifically ordered and directed by appellant's employe in
charge of the ovens to proceed to the last or eighth oven
and take therefrom a pot which had been heated and melted
to the proper consistency; that he and the two other em-
ployes of appellant furnished for that purpose proceeded
to said oven, and appellee standing directly over the top of
same removed the lid with a pair of tongs, and took hold
of the handle of the pot. The other two employes procured

an iron bar with a hook attached in the center of same and lowered the hook into the oven to a point at which appellee was able to and did with the tongs insert the handle of the pot into the hook. Each of the two employes held one end of the bar, and appellee was standing across the same close to the center of it. Appellee then put aside the tongs and took hold of the iron bar for the purpose of steadying same, and together with the other two employes raised the pot of metal until the top of it was above the floor level and entirely clear of the oven. ''That in order to release himself from the position in which he then stood he was compelled to and did shift his foot to the side of the top of the furnace next to the iron grating hereinabove described, and in so doing his foot accidentally and without intention on the part of plaintiff so to do, slipped into the aperture or opening between the furnace and said grating   *   *   *. That as a direct and proximate result of his foot so entering into said aperture, and the negligence of the defendant in so leaving the same open plaintiff lost his balance and fell with great force upon said iron grating upon his side and shoulder'', and received his injuries, described.

Appellant's learned counsel argue very earnestly and ably that the amended complaint in this action is obnoxious to a demurrer. In point one, under ''Points and Authorities'', and in the argument in support thereof, it 1. is clearly shown that the complaint is not good as a common-law action, inasmuch as it fails to allege that appellee did not at and prior to the accident have full knowledge of the condition complained of, and full appreciation of any danger there might be in working at the place where he sustained the injury complained of. This position is not controverted by appellee's counsel, but it is insisted that the complaint is drawn under the Employer's Liability Act of March 2, 1911. Acts 1911 p. 145, §8020a Burns 1914.

Under points two and three appellant's counsel presents the question that the complaint is not sufficient under the

act of 1911, *supra.* It is correctly stated under point
2. two, with authority to support it, that the act of
1911, being in derogation of the common law must
be strictly construed; that if the complaint be drawn under
the provisions of said act, its allegations must affirmatively
show facts within its terms, and that the court should not be
required "to dig out from the averments of the com-
3. plaint its theory". With respect to this contention,
we think it is clearly shown that the complaint was
rightly construed by the court to be drawn within the
provisions of the act of 1911, *supra.* Section 1 of said act
contains the following provision: "That any person, firm
or corporation while engaged in business, trade or com-
merce within this state, and employing * * * five or
more persons shall be liable and respond in damages to any
person suffering injury while in the employ of such * * *
corporation * * * where such injury or death resulted
in whole or in part from the negligence of such employer
or * * * its * * * agents, servants, employes or
officers, or by reason of any defect, mismanagement, or
insufficiency, due to * * * its * * * carelessness,
negligence, fault or omission of duty." Section 3 provides:
"Such employe shall not be held to have assumed the risks
of any defect in the place of work furnished to such em-
ploye", etc. The complaint contains the essential allegations
that appellant is a corporation engaged in business within
this State, employing more than fifty persons, therefore
more than five persons. It contains the allegation that
appellee was injured while in the employ of the corpora-
tion, and that said injury was due to the carelessness, negli-
gence, fault or omission of duty of appellant. Since the
assumption of risk is abolished by the act as shown by the
above quotation, and as held by the Supreme Court in the
case of *Vandalia R. Co.* v. *Stillwell* (1914), 181 Ind. 267,
104 N. E. 289, we think the demurrer to the complaint was
rightly overruled upon this point. It was not necessary to

refer specifically to the act itself by title and page.
4. The court takes judicial cognizance of the statutes of the State. If the allegations of the complaint bring it within the terms of the act, that is sufficient. *Vandalia R. Co.* v. *Stillwell, supra; McChesney* v. *Illinois Cent. R. Co.* (1912), 197 Fed. 85; *Ervin* v. *State, ex rel.* (1898), 150 Ind. 332, 340, 48 N. E. 249; *Southern R. Co.* v. *Ansley* (1909), 8 Ga. App. 325, 68 S. E. 1086; *McConnathy* v. *Deck* (1905), 34 Colo. 232, 82 Pac. 702.

The propositions argued under point three are as follows: "The complaint construed as stating a cause of action under the act of 1911 is defective, (a) as seeking to
5. impair the contract relation between appellee and appellant; (b) as being in contravention of the express terms of the act itself." It is urged in support of appellant's point "a" that the relation of master and servant having been entered into prior to the enactment of the act of 1911, *supra,* the subsequent passage of said act could not change the contractual relation existing between the master and servant prior to the time of the passage of the act, in other words, that the relation, as stated, having arisen *ex contractu,* the subsequent legislation could not change this relation. This act has been lately construed and upheld by the Supreme Court of this State in the case of *Vandalia R. Co.* v. *Stillwell, supra.* The precise question here involved was not considered by the court in that case, but the principle underlying appellant's contention has been decided adversely to it in the case of *Borgnis* v. *Falk Co.* (1911), 147 Wis. 327, 133 N. W. 209, 37 L. R. A. (N. S.) 489, where the court uses this language at page 366: "The right to bring an action in the future in case of a possible tort not yet committed is no part of the contract of employment. That right arises out of the relation of employer and employee and is subject to change by the lawmaking power at any time. The employer does not contract that it shall remain intact. There is no vested

right in a mere remedy for a hypothetical wrong. At most the law can not be said to do more than change the remedy for a tort which is yet to happen, and may never happen. The legislature may change the remedies for torts yet to be committed at any time, and such changes cannot be said to make any change in mere contracts of service existing between the parties.'' The supreme court of Massachusetts in the case *In re Opinion of Justices* (1911), 209 Mass. 607, 96 N. E. 308, in construing a workmen's compensation bill pending in the Massachusetts legislature, announces the same doctrine, as does also the New York Court of Appeals in a case in which it was contended that the requirement to have hand rails to stairs, hoisting shaft, etc., could not, under a statute, be applied to buildings and factories already in existence at the time the statute was passed. See *Health Dept.* v. *Rector of Trinity Church* (1895), 145 N. Y. 32, 39 N. E. 833, 45 Am. St. 579, 27 L. R. A. 710. The New York Court of Appeals based its decision on the proper exercise of the police power for the preservation of the safety and welfare of its citizens.

It is also insisted under point ''b'' that the complaint was bad because the injury was the result of a mere accident, for which the master can not be made to respond 6. in damages. The complaint contains the general allegation that the injury was due to the fault, negligence and carelessness of the master in leaving a certain aperture in the grating, which caused the fall, resulting in the injury complained of. We can not say that the allegations of the complaint show that the injury resulted from a mere accident. The specific allegations do not overcome the general averment of the master's negligence, and the complaint is therefore sufficient. *Cleveland, etc., R. Co.* v. *Wynant* (1885), 100 Ind. 160, 163; *Indianapolis St. R. Co.* v. *Ray* (1906), 167 Ind. 236, 243, 78 N. E. 978; *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 339, 342, 79 N. E. 186, 119 Am. St. 503, 7 L. R. A. (N. S.) 597.

It is next insisted that the answers of the jury to inter- rogatories are in irreconcilable conflict with the general ver- dict. The interrogatories and answers thereto read as follows: "1. Was not plaintiff in the employ of said defendant as a molder from some time in February until the 18th day of May, 1911? A. Yes. 2. Did not the plaintiff know of the condition of the opening between the grating and the corner of the oven as described in his complaint for a period of more than two months, immediately prior to the 18th day of May, 1911? A. Yes. 3. Did the plaintiff at any time make any request of said defendant to repair said opening? A. No. 4. Was not the plaintiff on and for more than two weeks immediately prior to the 18th day of May, 1911, a man of mature years, of ordinary intelligence and in full possession of his facul- ties? A. Yes. 5. Was not the plaintiff working at furnace number seven at the time he received the fall described in his complaint? A. No. 6. Was not the plaintiff stand- ing on the south side of the center of the furnace top at which he was working immediately before he fell? A. Yes. 7. Was not the top of the furnace at which the plaintiff was working immediately before receiving this fall about three (3) feet square? A. Yes. 8. Was there any open space between the east side of furnace number seven and the grating to the east thereof until within a few inches of the northeast corner of said furnace? A. No. 9. Was not the injury received by plaintiff at the time described in the complaint caused by plaintiff falling? A. Yes. 10. If you answer the preceding interrogatory yes, was not said fall caused by the plaintiff's foot slipping on the top of the furnace at which he was working? A. Yes."

It will be observed that the jury in response to inter- rogatory No. 9 answers that the injury to appellee was caused by his falling. In response to interrogatory No. 10 the jury finds that appellee's fall was caused by his foot slipping. The charge of negligence in the complaint is that

"on the 18th day of May, 1911 * * * defendant company had carelessly and negligently maintained the grating covering that part of the opening in the floor of the molding room * * * at and near the last oven and the farthest distant from the place where the molds were placed as heretofore described so that the said grating was not close up or flush with said oven, but said grating extended to within two and one-half or three inches of said oven. That said defect in the condition of said grating and oven was well known to the defendant and its officers and agents, or by the use of reasonable care might easily have been seen or known by the defendant, its officers or agents. That in order to release himself from the position in which he then stood, he was compelled to, and did shift his foot to the side of the top of the furnace next to the iron grating hereinabove described, and in so doing his foot accidently and without any intention on the part of plaintiff so to do, slipped into the aperture or opening between the furnace and said grating, which said aperture is hereinabove described. That as a direct and proximate result of his foot so entering into said aperture, and the negligence of the defendant in so leaving the same open, plaintiff lost his balance and fell with great force upon said iron grating upon his side and shoulder", thereby causing his injuries.

The allegation in the complaint that "as a direct and proximate result of his foot so entering into said aperture, and the negligence of the defendant in so leaving the same open, plaintiff lost his balance and fell with great force upon said iron grating upon his side and shoulder," we must accept as proved under the general verdict. The facts found by the jury in answer to interrogatories Nos. 9 and 10 are in irreconcilable conflict with the general verdict, because it is there found that the fall was caused by the foot slipping, with no reference to the aperture, and said reference can not be supplied by inference or intendment,

neither can it be said that it was supplied by the general verdict.

We are not unmindful of the well-established rule that in considering the effect of the jury's answers to interrogatories upon the general verdict, we must take as proved every material fact upon which evidence might have been properly heard, and if, when so considered, no irreconcilable conflict is found, then the general verdict prevails. In this case we can conceive of no evidence which could be heard changing the cause and manner of appellee's fall and consequent injury, which would not be in irreconcilable conflict with the jury's finding in the answers to the interrogatories. Appellee's able counsel state in their brief that "even if the slipping was the proximate cause, it only concurred with the negligence of the defendant", and to sustain the general verdict, this court must in effect so find. In the face of the finding of the jury that the slipping of the foot was the cause of the fall which caused the injury, we can not say that the jury might have found by the general verdict that there was some other or additional cause of the injury, and then say that the findings in answer to the interrogatories were not in irreconcilable conflict therewith. We can conceive of no state of facts that might have been proved under the allegations of the complaint that can bring the answers to the interrogatories above cited in harmony with the general verdict so as to permit both to stand.

The facts in this case are so essentially different from the facts in the case of *King* v. *Inland Steel Co.* (1912), 177 Ind. 201, 96 N. E. 337, 97 N. E. 529, cited and relied on by appellee, that it can not be said to support his contention in counsels' able effort to reconcile the answers to the interrogatories with the general verdict. The act of negligence complained of in the case of *King* v. *Inland Steel Company, supra,* was the failure to guard certain cogwheels in violation of the factory act of 1899. Acts 1899 p. 231.

It clearly appears from the facts in that case that no matter what caused appellant to fall, his coming in contact with the uncovered cogwheels was the proximate cause of the injury, and the uncovered condition of the cogwheels was due to the negligence of appellee. In the present case the jury found appellee's fall was due to the fact that his foot slipped. He did not come in contact with any cogwheel or piece of machinery negligently left unguarded, but, as the jury found, his injury was caused by his body coming in contact with the top of the furnace, or iron grating upon which he was at work, due to the fall caused by his foot slipping and not by the aperture at the side of the grating. It is not alleged that the iron grating was irregularly constructed or maintained. It can not be said that his injury might not have been sustained with equal severity if there had been no aperture at the side of the grating into which his foot is alleged to have slipped. The finding that the fall was caused by appellee's foot slipping is conclusive upon that question in considering the effect to be given to the answers of the jury to the interrogatories.

The case of *Evansville Hoop, etc., Co.* v. *Bailey* (1909), 43 Ind. App. 153, 84 N. E. 549, cited by appellee is likewise readily distinguishable in its facts from the case at bar, as are also the cases of *Bessler* v. *Laughlin* (1907), 168 Ind. 38, 79 N. E. 1033; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 73 N. E. 899; *Cook* v. *Ormsby* (1910), 45 Ind. App. 352, 89 N. E. 525.

Under its motion for a new trial appellant assigns: (1) the verdict is contrary to law; (2) the verdict is not sustained by sufficient evidence; (3) error of the court in the admission of certain evidence; (4) error of the court in giving to the jury instructions Nos. 6, 10 and 12 requested by appellee, and in refusing to give instructions Nos. 15 and 23 requested by appellant. Instruction No. 6 reads as follows: "In determining whether or not the maintenance by defendant of the grating, such as

has been shown in the evidence in this case, was negligent, you have a right to consider all the facts and circumstances shown in evidence, which throw any light upon that question. You may consider the construction of the furnaces used, the character of the employment of the men at work at such furnaces, the number of men there employed, *and all other facts and circumstances which you may determine as bearing upon such question.*" The parts especially objected to are italicized. It is well stated by appellant that this instruction gave to the jury an unlimited discretion to say that any evidence that had been submitted to them on other points might be proper for them to consider in determining the question of negligence. Many facts were introduced in evidence in the case which would not be proper for the jury to consider in determining the question of appellant's negligence. The latter part of the instruction is too broad as not confining the jury to the facts directly pertaining to that question. Instruction No. 12 is subject to the same infirmity, and is justly criticised. Instruction No. 10 given by the court is not erroneous. Instruction No. 15 requested by appellant and refused by the court, which sought to have the jury instructed that it must take the law as given it by the court in its instructions, and not from the argument of counsel, correctly stated the law, but we are unable to say that harmful error resulted from the refusal to give this instruction, as the court in instruction No. 2 given on its own motion covered the point involved, not so completely as requested by appellant's instruction, but omitting only that the jury was not to take the law from the argument of counsel. As to whether the more comprehensive instruction should have been given must depend in a large measure upon the facts occurring at the trial, and must therefore be left to the sound discretion of the trial court.

Instruction No. 23 requested by appellant and refused by the court reads as follows: "In this action the complaint

alleges that the defendant carelessly and negligently maintained the grating in question 'so that the said grating was not close up flush with the oven, but said grating extended to within two and one-half or three inches of said oven.' Before the plaintiff can recover in this action, he must show that his injuries were traceable directly and proximately to the said negligence of the defendant. And if the plaintiff purposely or carelessly did any act which caused him to fall, or accidently lost his balance and fell and that the falling was not produced by the existence of the alleged opening between the said grating and oven, then such opening is not the proximate cause of the injury and the plaintiff cannot recover in this action and your verdict should be for the defendant.'' In view of the theory of the defense that the injury was purely accidental, and not due to the aperture between the grating and the oven, it was error to refuse to give this instruction. This error is not cured by any other instruction given.

Objection is also made to the admission of certain evidence. We have given consideration to this question, but find no reversible error committed by the court in this respect. The ends of justice will be best subserved by granting a new trial. Judgment reversed with instructions to grant a new trial, and for other proceedings not inconsistent with this opinion.

NOTE.—Reported in 105 N. E. 167. As to risks assumed by servant before era of employer's acts, see 52 Am. Rep. 737. On the question of the master's statutory liability for defects in condition of plant, generally, see 57 L R. A. 817. See, also, under (1) 26 Cyc. 1397, 1399; (2, 4) 26 Cyc. 1392; (3) 26 Cyc. 1392, 1397; (5) 8 Cyc. 1002; (6) 26 Cyc. 1386; (7) 26 Cyc. 1513; 38 Cyc. 1927; (8) 26 Cyc. 1491; (9) 38 Cyc. 1711; (10) 26 Cyc. 1496.